Our next case for this morning is United States, I'm not sure how to pronounce her last name, against Gawron, something like that. Mr. Hillis. May it please the court, counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office for the Central District of Illinois. I represent Izabela Gawron. She raises two issues on the appeal. The first is with respect to the imposition of the two-year term supervised release. I believe that it was imposed in error because the judge did not make the necessary findings, and supervised release is not to be imposed ordinarily in cases where the defendant is a removable alien, such as the case here. So let me express one of my concerns with your argument there, Mr. Hillis. I certainly see the statement, and obviously it's advisory like everything else, but at least in my experience looking at immigration cases, they don't all zoom along like clockwork. Many of them languish for a long time. And I looked at what the district judge said, and he basically says, if this winds up being one of those cases where she hasn't been removed yet when she's finished her prison term, I think I want supervised release. And so he imposes the supervised release conditions. So why isn't that the kind of thing that the district judge is allowed to take his own view on? A view, let's concede, that's in tension with what the policy statements say, or the guidelines. But it's not crazy. I mean, a lot of immigration cases take forever, actually. Sure, some can. I don't know that this one will. I don't know if it will either, but I sure have seen a lot that did. And neither did the district judge at the time he said this, right? That's true. So that would raise then the question, perhaps, of if we're dealing in an undeveloped record about how long something needs to be done, and whether it should be done at all. I guess then I could volley back why two years instead of one. You can extend the term of supervised release if necessary into those circumstances. But this is an undeveloped record on that subject, and it certainly doesn't speak to the point of why we have one year instead of two. It's a parsimony principle. I'm sorry, Judge. Isn't it especially true here? Because this is a fraud case. Fraud cases, unlike drugs or violence, aren't automatically deportable cases. She was out on bond at the time. So she has not been picked up by ICE or detained by ICE. She wasn't going to report. She still hasn't reported, because the sentencings were staggered. So on this record, why wasn't it perfectly appropriate, knowing that she hadn't been detained by ICE? It was a fraud conviction and not a violent crime or a drug offense. And she had some time before she was reporting. Why wasn't that a perfectly reasonable determination of the district court judge, as he noted, just in case she is not deported? I think you made now a far better explanation than the district court did about why the supervised release maybe should have been imposed. So that would go to the ordinary case, making necessary findings, statements of the record, things of that nature. And then it's the rebuttable presumption that would be created under those circumstances. We don't know many of the things that Your Honor just said, but certainly you've said more than the district court ever did on the subject. But the judge made clear, and the facts were in the record, that she was out on bond. The judge made clear that this is only if she is not deported. Why isn't that perfectly within his purview? Sure. I would say that it's a lack of findings. It's the essential problem. I get what is there in the record for the judge to have made the If you look at appendix page 33, you'll find that all these things that you're asking about, all three of you, they're not here. The judge could have made the necessary findings. He could have relied on the record to make determinations that would maybe have supported this, to show that this is not the usual case, because it may be some time before she is removed. Any of these things could have been done. They're not. Incidentally, I'm a bit troubled, then, what do we do with the perspective that the Sentencing Commission says that this is not, in the ordinary case, something that should be done, and then we have judges say, but we think that the wheels grind a little slowly for removal, and so we are going to then impose supervised release in all cases? What are we doing for deference to the Sentencing Commission? But the guidelines are not, as we know, the guidelines are not binding. And just as I assume that you endorse the district judge's discretion to give a below-guidelines sentence, and to not treat the policy expressed in the guidelines as binding in that instance, the same thing is true if the district judge opts with an explanation under 3553 to deviate the other way. Judge, I always am in favor of below-guidelines sentences, but I am equal opportunity when it comes to process, about making the necessary findings to support the conclusion so that you have an adequate record to review on appeal. But are you saying he needed to have specific findings about the likelihood of a delayed deportation in her case, or are you saying just... Go ahead. Yes. Your Honor, it's about the particular circumstances in the case. The commission's made that clear. So yes, make that determination. If you're drawing on broad experiences elsewhere, you can make those observations to buttress your conclusion, but I think that having testimony or some evidence about what the likelihood is, and then the necessity of doing this, makes it an unusual case, something that's not ordinary. How could you possibly do that, though? Because the vagaries of the immigration process, I mean, what you're asking a district judge to have to do to make a predictive judgment about how the system might function for any individual, that's a pretty tall order. I'm not asking them to do anything that's not in the language of the text. I'm a textualist ever since Judge, or Justice Kagan said that they are, I think I should be, too. Following the text of what the commission says, I think, is a good place for us to go on this. If it's too much for the judge to do, I think that there's something that's very easy for us here. Don't impose a term of supervised release. Mr. Ellis, let me take a step back, please. Yes. Why haven't you waived this argument with respect to imposing a term of supervised release? The defendant's plea agreement clearly reflected that the crime she was pleading guilty to subjected her to a term of supervised release. The pre-sentence investigation report included that this was a crime that had a term of supervised release, and the recommendation from the probation officer, which I think your client had access to, it was a little bit hard to tell from the record, that recommended a term of supervised release. There was no objection below at any point to imposing a term of supervised release. Why haven't you waived your argument, given that your client was well aware of it below, had the opportunity to address it in advance of sentencing, and never raised it with the court? Sure. There's a very short answer, and that is the government has waived waiver by not arguing waiver, so there's been no assertion by the government of that point. I don't think that we need to pursue it further. As for everything else you said, that would put us in the territory of plain air review, but the government hasn't even asserted plain air, and of course under Cottenham, the United States v. Cottenham, if you don't assert plain air, then you are then in, as standard of review, de novo review again. So I think that's where we are, Judge. Why would this be plain air, which is a forfeiture concept, as opposed to waiver? So for there to have been plain air, again as I understand Cottenham, there would have to be an assertion by the government. I don't think we're there, but in addition, even under plain air, if there aren't the necessary findings, then we've got the four factors that we analyze under plain air, and we have somebody who ultimately has an additional impingement on her liberty that subjects her to revocation and additional incarceration through some provision of supervised release, the term of supervised release, that the commission said shouldn't be imposed. So I think that would all square up with the plain air analysis on this, if one was required, but I think that we're under de novo, and I think the government has waived any waiver argument in my short response. Counsel, are you saying that we don't have the discretion to consider whether this is waived or forfeited, even though the government didn't raise it, or that we have the discretion, but you're urging us not to exercise it? I think that waiver is something that has to be asserted. It is like an affirmative defense to an argument, and if the government hasn't raised the issue, I don't see the Seventh Circuit in other cases hurrying to find that there is a waiver there. I see that they cite case law that says the government, like any party, can If I had missed an argument, I don't know that the government would be here championing my ability to raise something or do something different than what my omission or whatever had led me to where I was at that point in the case, Judge. So I just, again, as a matter of procedure, think that we should all be making necessary findings, making necessary arguments, and when we don't, we are in other than on the second point, which I'll stay in the library. Okay, that sounds great. Mr. Bindi. Good morning, may it please the Court. There is no procedural error because the District Court adequately explained its decision to impose a term of supervised release in this case. Aside from the fact that the Court explicitly adopted its 3553 analysis that applied to its decision regarding the sentence of incarceration and applied that analysis also to the decision to impose a term of supervised release, the Court also said that it felt that a term of supervised release was appropriate in the event that the defendant was not deported, that supervision would assist in her reintegration into society. So what happens to the term of supervised release if she is instantly removed? She's taken from prison, turned over to ICE in unprecedented rapidity, ICE removes her, and then they're sitting on the books, this two-year term of supervised release. Does it go away? Does it reinstate itself if something happens? Well, it has no effect if the defendant is never released from custody. If she's in Poland, of course, the long arm of the United States law does not extend that far, at least the Supreme Court tells us that we're not regulating the world extraterritorially these days. But does it ever go away? It just sits there on the books? Well, the judgment reflects a term of supervised release. And no discharge from it? And no discharge, well, the term of it is... With a discharge at the end of the two-year period? Correct. Without any supervision, with no probation officer in charge? The term of supervised release would begin to apply upon the defendant's release from custody in the United States. She's been sentenced to prison. Right. And let's say, hypothetically, she's in the United States for a month while the removal proceedings are going on, and then off she goes on an airplane to Poland. She's removed. So there's no federal probation officer paying any attention to what she's doing in Poland. We don't have a Polish division. And does the probation office enter something on the record to say this is hereby discharged in light of the removal? Or does the probation officer say this is... What happens? Well, to my knowledge, a probation officer doesn't enter anything on the record when supervision terminates in the ordinary case. In the case of a defendant who has been removed from the country, again, the term of supervised release is going to begin to apply when the defendant is released from the term of imprisonment imposed by the district court. When the BOP releases her from that term of imprisonment, that's when supervision is going to begin. And it will terminate in two years from that date, regardless of whether she is in ICE custody at that time or has been removed from the country. So if she comes back from Poland after a year, is back in the country, then she still has a year of supervised release left. But if she comes back from Poland five years, then it's done. There's no lingering sentence on the books. To my knowledge, yes. That's the way it works. If the supervision terminates two years after she is released from custody, and more than two years after that, she comes back to the country, she's not in violation of the condition of supervised release. Why didn't you assert waiver or forfeiture on this argument? The defendant cited the guideline in the sentencing memorandum and quoted it, saying that a term of supervised release ordinarily should not be imposed in these circumstances. The matter was not further argued after that, but the fact that it was referenced in the defendant's sentencing memorandum kind of made me think that forfeiture or waiver would not be well received by the court. So again, we think that there is no procedural error shown by the district court's decision here. And regarding substantive reasonableness, that argument has also been made, and the argument is based on the imposition of supervised release, running afoul of the parsimony principle. It's our view that this is incorrect. The guideline suggests that supervision should not be imposed in these circumstances because it's essentially pointless. What about this? We keep coming back to this issue because it's raised a lot. The issue of the scienter component of the remain within, we'll assume given the government's position, we're going to correct this to say the judicial district, but within the place. The decisions that say that it didn't need to be there refer to earlier versions of the guidelines. The guidelines now seem to look for a scienter. Isn't that something we should fix? Well, certainly in this case, that requirement is not something that would have applied to this defendant. I mean, if we think supervised release is really going to happen, we need to take it seriously, right? So on the hypothesis that ICE goes out of business or something else happens and she's serving supervised release, I don't know why a decision of this court based on the 2012 edition of the guidelines tells us as much as we need to know about the 2016 edition of the guidelines, which now says knowingly stay within the jurisdiction, stay within the place. Well, Your Honor, again, the court's cases have routinely said that scienter requirement is not necessarily included in the judgment. If it is, then that's something that, again, can be corrected ministerially without a remand. But this is such a common problem. And if the guidelines themselves have changed, then that would be a rational basis for us to take a look at saying, well, maybe it wasn't required, but maybe it should be now. It's not like the government's taking the position that if you live on the border between Illinois and Wisconsin, you inadvertently drive your car down some country road that doesn't have a welcome to Wisconsin sign on it that you should be found to have violated by leaving the northern district of Illinois. So isn't the word knowingly a useful addition? Well, the court has always been of the view that the word knowingly would be a useful addition. And now it's called for by the guidelines. Well, that may be, but again, whether or not this judgment needs to be amended or corrected. Right, that's the only question. Since supervised release hasn't started yet, is that something, I mean, why is the government going to the mat saying that that word shouldn't be added to the condition? Well, I would say that the government isn't really going to the mat on that one, Your Honor. We'll say that if it's appropriate to have that word included in the judgment, then that can be done with a limited remand or even with no remand. I mean, that this court's, well, a limited remand would suffice. I think a limited remand would be necessary for that if we were to think it should be done. To have that included as part of the judgment. And Mr. Bendy, this issue does come up frequently, so I hope your office is getting the word out that the knowingly is in the new guidelines, because I don't know that the form used by the courts reflects that yet. I don't think the form does. Exactly. And if the form doesn't, then it might get lost. So I hope that as well as the federal defender, the U.S. Attorney's Office is getting out the word that lawyers should be asking for that at the time of sentencing. And hopefully the form will get Thank you. For these reasons, we ask that with the correction to the travel restriction that the judgment be affirmed. All right. Thank you. Mr. Hillis, anything further? Very briefly, in addition to the guideline changes, 3583B3 says that a statement of the commission, the pertinent policy statement, the condition that's ultimately imposed should be consistent with that. So that's congressional. So 3583B3 also requires the addition of the word knowingly, and we don't like to have people brought in under strict liability for violations of supervised release when you can be in prison. Johnson, the Supreme Court case of the primary purpose of supervised release is rehabilitative. And I don't know much about horticulture, but I'll make a quick flower analogy. The supervised release, as it stands here, it's all thorn and no rose. Ms. Gowron is off to Poland, gets none of the benefits of rehabilitation through supervised release. And in addition, it is something the commission says is not to impose when somebody is to be like ordinarily not to be imposed when the person is to be removed. So that's the case here. We ask that you vacate and remand. Mr. Hillis, do you know if the forms in your district reflect that? I know you address a lot of these supervised release issues. Do the forms, it may be worth taking a look at and recommending it if not. Judge, I will say that we see this different in different places, even by judge. However, the consistent beat of the drum from the Seventh Circuit has been per givens. In those cases, you don't need scienter, and so we're not imposing a scienter requirement. The forms themselves, highly variable. The Northern District has not included it ever, in my experience. I think Wisconsin has. But now there's a change in guidelines too. Yes, but I believe that's been largely ignored. And in the Central District, I think that it's variable again by judge. So I don't know if it's in there. All right. Well, thank you. Thanks to both counsel. We will take the case under advisement.